J-A26025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| COLBY MICHAEL SNYDER | |
| Appellee | No. 552 MDA 2017 |

Appeal from the Order Entered March 3, 2017
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0002727-2016

BEFORE:     BOWES, OLSON AND RANSOM, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 29, 2017**

The Commonwealth of Pennsylvania appeals from the March 3, 2017 order granting Colby Michael Snyder's ("Appellee's") suppression motion. We affirm.

The factual background of this case is as follows. At approximately 9:25 p.m. on June 11, 2016, Pennsylvania State Police Trooper Michael Rosewarne noticed Appellee's vehicle traveling at a high rate of speed, changing lanes without a turn signal, and weaving on Interstate 81. Trooper Rosewarne initiated a traffic stop at which time he noticed an odor of alcohol emanating from Appellee. When Appellee exited the vehicle he was staggering and had trouble locating his license, registration, and insurance card. Appellee failed multiple field sobriety tests. A portable breathalyzer test showed a blood alcohol concentration ("BAC") of .121.

Appellee was transported to a local booking center where he was read the then-current DL-26 warnings. Those warnings informed Appellee that he would be subjected to increased criminal penalties if he refused to submit to a blood draw. After being read the DL-26 warnings, Appellee submitted to a blood draw. That blood draw indicated that Appellee had a BAC of .213.

The procedural history of this case is as follows. On November 14, 2016, the Commonwealth charged Appellee via criminal information with driving under the influence ("DUI") – general impairment,[1] DUI – highest rate,[2] and three summary traffic offenses. On December 16, 2016, Appellant filed a motion to suppress the blood draw evidence in light of the Supreme Court of the United States' decision in **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016). In **Birchfield**, the Supreme Court of the United States held that police can compel a driver to give a breath sample without a warrant; however, police cannot compel a driver to provide a blood sample without first obtaining a search warrant except in certain limited circumstances. At the conclusion of a suppression hearing on March 3, 2017, the trial court

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] 75 Pa.C.S.A. § 3802(c).

suppressed the blood draw evidence. This timely interlocutory appeal as of right followed.[3] *See* Pa.R.A.P. 311(d).

The Commonwealth presents two issues for our review:

1. Did the [t]rial [c]ourt improperly apply the exclusionary rule where there was established probable cause and the police were properly following established [] precedent?

2. Did the [t]rial [c]ourt improperly suppress the results of [Appellee]'s blood draw when [Appellee] provided actual valid consent for the blood draw as demonstrated by his cooperative behavior and admittance that he had consumed too much alcohol?

Commonwealth's Brief at 4.

Both of the Commonwealth's issues challenge the trial court's suppression of the blood draw evidence. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). Our standard of review in addressing a challenge to a trial court's order granting a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *See Commonwealth v. Champney*, 161 A.3d 265, 271 (Pa. Super. 2017) (*en banc*) (citation omitted). "[O]ur

_____

[3] On March 30, 2017, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On April 12, the Commonwealth filed its concise statement. On April 19, 2017, the trial court issued its Rule 1925(a) opinion. Both of the Commonwealth's issues were included in its concise statement.

scope of review is limited to the factual findings and legal conclusions of the [trial] court." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "When the Commonwealth appeals from a suppression order, we . . . consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." ***Commonwealth v. Young***, 162 A.3d 524, 527 (Pa. Super. 2017) (citation omitted). "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." ***Commonwealth v. Palmer***, 145 A.3d 170, 173 (Pa. Super. 2016) (citation omitted).

First, the Commonwealth argues that the good-faith exception to the exclusionary rule, as set forth in ***Davis v. United States***, 564 U.S. 229 (2011) and ***Illinois v. Krull***, 480 U.S. 340 (1987), applies in this case. After this case was fully briefed, this Court held that the ***Davis***/***Krull*** rule does not apply to claims brought pursuant to Article I, Section 8 of the Pennsylvania Constitution. ***Commonwealth v. Carper***, 172 A.3d 613, 618-620 (Pa. Super. 2017).[4]  This Court explained that "the fact that police acted in good-faith reliance on appellate precedent was irrelevant when determining if the blood draw evidence was admissible at trial." ***Id.*** at 620.  Therefore, the trial

---

[4] The District Attorney of Cumberland County upheld the highest ideals of the legal profession by filing an application for post-submission communication which noted that ***Carper*** may control the first issue presented in this case.

court correctly held that the blood draw evidence was not admissible pursuant to the good-faith exception to the exclusionary rule as set forth in **Davis** and **Krull**.

In its second issue, the Commonwealth argues that, notwithstanding the partially inaccurate DL-26 warnings, Appellee's consent was voluntary. Appellee argues that we cannot reach this question because it is a factual question "outside the plenary review of pure questions of law." Appellee's Brief at 7. This argument confuses this Court's standard of review with our power to review trial court decisions. As noted above, we may reverse a trial court's factual findings when they are unsupported by the record. **Champney**, 161 A.3d at 271. Thus, we have both the power and obligation to review the trial court's factual findings to determine if they are supported by the record.

When a defendant is given partially inaccurate DL-26 warnings, the trial court must evaluate his or her "consent based on the totality of all the circumstances and given the partial inaccuracy of the officer's advisory." **Evans**, 153 A.3d at 331 (internal ellipses and alterations omitted), *quoting* **Birchfield**, 136 S.Ct. at 2186. Our Supreme Court has explained that:

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Commonwealth v. Gillespie*, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J., opinion announcing the judgment of the court) (internal quotation marks omitted), *citing **Commonwealth v. Cleckley***, 738 A.2d 427, 433 n.7 (Pa. 1999).

In this case, we conclude that the trial court's factual finding that the Commonwealth failed to prove by a preponderance of the evidence that Appellee's consent was voluntary is supported by the record. Contrary to the Commonwealth's argument, Appellee was clearly in custody. He was placed in handcuffs and transported in the back of a police cruiser to the local booking center. The fact that other people were present during the blood draw fails to indicate Appellee was not in custody. Thus, the first **Cleckley** factor weighed against a finding of consent.

Second, the Commonwealth used coercive tactics, *i.e.*, Trooper Rosewarne read Appellee the partially incorrect DL-26 warnings. We acknowledge that Trooper Rosewarne acted in good-faith reliance on then-binding appellate precedent when reading the partially incorrect DL-26 warnings. Nonetheless, Trooper Rosewarne reading the partially incorrect DL-26 warnings was coercive. Thus, the second **Cleckley** factor weighed against a finding of consent.

The Commonwealth argues that Appellee knew he had a right to refuse a blood draw because the DL-26 warnings informed him of this right.

Moreover, the Commonwealth contends that the license suspension that follows from refusing a blood draw was akin to the increased criminal penalties. This Court has previously rejected similar arguments. In *Commonwealth v. Ennels*, 167 A.3d 716 (Pa. Super. 2017), the defendant was facing the same criminal penalties whether he consented to a blood draw or not. This Court held that this fact was "irrelevant to the voluntary-consent analysis." *Id.* at 724. Instead, this Court held that the fact that the DL-26 warnings incorrectly informed the defendant that he faced increased criminal, *i.e.*, not civil, penalties if he refused a blood test was the relevant factor. Therefore, the third *Cleckley* factor weighed against a finding of consent.

Next, the Commonwealth contends that Appellee's prior DUI arrests evidence his education regarding the DUI arrest process. We agree with this assertion; however, we disagree with the inference the Commonwealth draws from this assertion. These prior arrests for DUI indicate that Appellee was not aware of his right to refuse a blood draw. As noted above, the partially inaccurate DL-26 warnings informed Appellee, although he could refuse a blood draw, he would face increased criminal penalties if he did so. This was not the first time that Appellee was read these warnings. He was read the warnings during his prior DUI arrests. Therefore, he was informed on multiple occasions, by separate law enforcement officers, that refusing to consent to a blood draw would result in stiffer penalties. Thus, the fourth *Cleckley* factor weighed against a finding of consent.

Finally, the Commonwealth argues that Appellee's cooperation in performing field sobriety tests and taking a portable breathalyzer test indicates his cooperation with law enforcement. We agree that this factor weighs in favor of a finding of consent. There were no signs that Appellee stopped cooperating with law enforcement. Even his refusal to perform one field sobriety test was done in order to speed the process along.

Although the trial court did not cite **Cleckley**, it carefully weighed these factors and found that Appellee's consent was involuntary. **See** Trial Court Opinion, 4/19/17, at 3-4. As an appellate court, we may not reweigh these factors. **See Commonwealth v. Baker**, 24 A.3d 1006, 1020 (Pa. Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013). Accordingly, we conclude that the record supports the trial court's factual finding and affirm the order granting Appellee's suppression motion.

Application to file a post-submission communication granted. Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/17